UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDIA FORCE COMMUNICATIONS (2007) LTD.,<br><br>Plaintiff,<br><br>v.<br><br>ASPIRATION PARTNERS, INC., *et al.*,<br><br>Defendants. | Case No. 2:23-cv-03799-FLA (SKx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAYING ACTION [DKT. 35]** |

## RULING

Before the court is Defendant Aspiration Partners, Inc.'s ("Defendant" or "Aspiration Partners") Motion to Dismiss Plaintiff's First Amended Complaint and Compel Arbitration ("Motion"). Dkt. 35 ("Mot"). Plaintiff Media Force Communications (2007) Ltd. ("Plaintiff") opposes the Motion. Dkt. 42 ("Opp'n"). On July 10, 2024, the court found this matter appropriate for resolution without oral argument and vacated the hearing set for July 12, 2024. Dkt. 49; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons stated herein, the court ORDERS Plaintiff's claims to arbitration and STAYS the action pending decision by the arbitrator.

**BACKGROUND**

Plaintiff initiated this action on May 18, 2023, and filed the operative First Amended Complaint ("FAC") on August 14, 2023, asserting two causes of action for breach of contract and account stated against Defendant. Dkts. 1, 10 ("FAC"). Plaintiff alleges the parties entered into an Advertiser Service Agreement ("Agreement") on March 6, 2020, and executed an insertion order ("Insertion Order") the same day pursuant to the Agreement. FAC ¶ 8. Under the Agreement and Insertion Order, Plaintiff was to provide advertising and marketing services to Defendant, in exchange for specified payment of monthly fees. *Id.* ¶ 10. Plaintiff alleges it "properly remitted invoices to Defendant in a timely manner, as outlined in the [Agreement]," but Defendant failed to make required payments, despite repeated demands by Plaintiff. *Id.* ¶¶ 14–22.

**DISCUSSION**

**I.    Legal Standard**

Section 2 of the Federal Arbitration Act ("FAA") makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4 [9 U.S.C. § 401, *et seq.*]." 9 U.S.C. § 2. "[T]his provision reflect[s] both a 'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted).

Accordingly, "courts must place arbitration agreements on equal footing with other contracts, and enforce them according to their terms." *Id.* (citations omitted). Arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* (quotation marks omitted).

1    "It is well established that where the contract contains an arbitration clause,
2    there is a presumption of arbitrability." *Comedy Club, Inc. v. Improv W. Assocs.*, 553
3    F.3d 1277, 1284 (9th Cir. 2009) (quotation marks omitted). "[A]ny doubts concerning
4    the scope of arbitrable issues should be resolved in favor of arbitration, whether the
5    problem at hand is the construction of the contract language itself or an allegation of
6    waiver, delay, or a like defense to arbitrability." *Three Valleys Mun. Water Dist. v. E.*
7    *F. Hutton & Co.*, 925 F.2d 1136, 1139 (9th Cir. 1991) (quotation marks omitted).

## II. Analysis

Defendant moves to compel Plaintiff's claims against it to arbitration on the grounds that Plaintiff entered into a valid and enforceable contract that requires all disputes regarding the Agreement be resolved through arbitration. Mot. at 5. Specifically, Defendant points to Section 12 of the Agreement, which states the parties agree to "have all disputes regarding this [A]greement resolved by binding arbitration," and argues the breach of contract and account stated causes of action asserted in the FAC fall within the scope of this provision. Plaintiff does not dispute it entered into the Agreement or that its claims are subject to the arbitration provision of the Agreement.

"Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). "However, these gateway issues can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* provide otherwise.'" *Id.* (emphasis in original) (quoting *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649 (1986)). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (cleaned up).

The Agreement states in relevant part:

3

> 12. Dispute Resolution. This Agreement shall be governed by the laws of Israel without respect to choice of law rules. For the purpose of contract interpretation, the Parties agree to the law of the state of Delaware. The Parties consent to have all disputes regarding this agreement resolved by binding arbitration before a single arbitrator. The parties agree to conduct the arbitration in a mutually agreeable location and each party shall bear the costs of such arbitration. This provision was a bargained for relinquishment of both parties [*sic*] rights to jurisdiction in their respective states or countries….

Dkt. 34-1.

The Agreement clearly and unmistakably states the parties agree to resolve all disputes regarding the contract through binding arbitration. *See First Options*, 514 U.S. at 944. As Plaintiff does not dispute it entered into the Agreement or that the claims forming the basis of this action are covered by the dispute resolution provision, the court finds "there is an agreement to arbitrate between the parties" and the Agreement covers the dispute at issue. *See Brennan*, 796 F.3d at 1130.

Plaintiff opposes the Motion on grounds that Defendant either breached the provision or waived its right to arbitration by ignoring Plaintiff's prior demands for arbitration. Opp'n at 9. Plaintiff relies primarily on *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005), in which the court denied a motion to compel arbitration where the moving party breached an arbitration agreement by "admit[ing] that it refused to arbitrate [the plaintiff's] claim." The court reasoned that granting the motion to compel arbitration "notwithstanding [the defendant's] breach of the arbitration agreement [] would set up a perverse incentive scheme," whereby defendants "would have an incentive to refuse to arbitrate claims … in the hope that the [plaintiff] would simply abandon them. This tactic would be costless to [defendants] if they were allowed to compel arbitration whenever a frustrated but persistent [plaintiff] eventually initiated litigation." *Id.* at 1012.

In contrast, here, there is no evidence Defendant affirmatively refused to arbitrate or rebuffed Plaintiff's requests to arbitrate, and, thus, the policy concerns

4

discussed in *Brown* are not implicated. Rather, the record reflects Defendant "failed to respond to the demand for arbitration," and "subsequent to the June 7, 2023 teleconference, Defendant ceased responding to Plaintiff altogether." Opp'n at 7.

A finding of willful refusal to arbitrate is further belied by the procedural history in this case. On August 14, 2023, Plaintiff filed the FAC, which Defendant failed to answer. Dkt. 10. Plaintiff thereafter requested the clerk to enter default, and default was entered on September 12, 2023. Dkts. 15, 18. On November 16, 2023, Defendant filed an *Ex Parte* Application for Leave to Oppose Plaintiff's Motion for Default Judgment (Dkt. 21), which the court granted (Dkt. 29). Specifically, based on Defendant's representations, the court found Defendant's failure to respond to the FAC to be attributable to excusable neglect, based on "unprecedented" upheaval at the company during the relevant time period and an inability to pay counsel due to a hold on its bank accounts. Dkt. 29 at 3.

Accordingly, and without conclusive evidence of "refus[al] to participate in properly initiated arbitration proceedings,"[1] *Brown*, 430 F.3d at 1011, the court finds Defendant's failure to respond to Plaintiff's demands for arbitration under the aforementioned circumstances did not constitute a refusal to arbitrate, particularly where Defendant "reasonably believed arbitration or litigation would be unnecessary

---

[1] Plaintiff offers the declaration of Joseph Huser, who attests he "attempted to obtained [Defendant's] consent to use AAA for arbitration, but Aspiration [Partners] refused to consent," and ignored future demands to consent to arbitration. Dkt. 42-6 ¶¶ 2–9. The supporting exhibits, however, include one letter from Plaintiff to Defendant, stating Plaintiff's requests for arbitration were "essentially ignored[.]" *Id.*, Ex. 3. Defendant counters it "reasonably believed arbitration or litigation would be unnecessary if settlement discussions were successful based upon Plaintiff's express representation that it would not serve the Original Complaint or move to compel arbitration while the parties worked to explore an amicable resolution." Dkt. 45 ("Reply") at 9. Additionally, Defendant notes Plaintiff refused to provide a copy of the Agreement (which Defendant was unable to locate), and thus, Defendant could not conduct a meaningful evaluation of Plaintiff's payment demand before consenting to arbitration. *Id.*; Dkt. 45-1 ¶ 4; Dkt. 45-2 ¶ 2.

if settlement discussions were successful" and Plaintiff expressly represented "it would not serve the Original Complaint or move to compel arbitration while the parties worked to explore an amicable resolution." Reply at 9.

For these reasons, the court finds Defendant has not breached the arbitration provision of the Agreement or waived its right to arbitrate.

## CONCLUSION

For the aforementioned reasons, the court ORDERS Plaintiff's claims to arbitration pursuant to the procedures set forth in the Agreement, and STAYS Plaintiff's claims pending the arbitrator's decision.

The parties shall submit the matter to arbitration within thirty (30) days of this Order, and file a joint report regarding the status of the arbitration within seven (7) days of submission and every ninety (90) days thereafter. Failure to submit the matter to arbitration or file joint reports timely may result in sanctions up to and including the dismissal of the action, or a determination that Defendant has waived its right to arbitrate Plaintiff's claims.

IT IS SO ORDERED.

Dated: July 29, 2024

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge